1  DOUGLAS M. NEISTAT, ESQ. (State Bar No. 055961)
   dneistat@gblawllp.com
2  JEREMY H. ROTHSTEIN, ESQ. (State Bar No. 316140)
   jrothstein@gblawllp.com
3  G&B LAW, LLP
   16000 Ventura Boulevard, Suite 1000
4  Encino, California 91436
   Tel: (818) 382-6200 • Fax: (818) 986-6534

5

6  [Proposed] Attorneys for Debtor and Debtor-in-Possession
   Crown Jewel Properties, LLC

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11 | In re                              | Case No.: 2:23-bk-17999-NB

12 | CROWN JEWEL PROPERTIES, LLC,        | (Chapter 11)

13 |          Debtor.                    | **APPLICATION TO EMPLOY SM REALTY ADVISORS CORP. AS REAL ESTATE AGENT FOR DEBTOR AND DEBTOR IN POSSESSION NUNC PRO TUNC AS OF DECEMBER 1, 2023; DECLARATION OF BARRY SIMSON RE STATEMENT OF DISINTERESTEDNESS**

18 |                                     | [No Hearing Required]

20      TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE,

21 AND PARTIES IN INTEREST:

22      By this Application, Crown Jewel Properties, LLC (the "Debtor"), the debtor and debtor in

23 possession, represents as follows:

24                                    **I.**

25                              **BACKGROUND**

26      1.    The Debtor, a California limited liability company, is the debtor and debtor-in-

27 possession herein, having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code

28 on December 1, 2023 (the "Petition Date").

G&B LAW

2.      The Debtor continues in possession and operates and manages Debtor's affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in the case.

3.      The Debtor proposes to employ SM Realty Advisors Corp., a California corporation ("SMRA"), as the Debtor's real estate agent and financial advisor with the employment to be effective as of the Petition Date.

4.      The Debtor's only asset is vacant 12.5 acre contiguous site (the "Property") located in Northern San Diego County, California. The Debtor filed this case after defaulting on its obligations to Buchanan Mortgage Holdings, LLC, holder of a deed of trust on the Property. The Debtor requires the employment of SMRA to act as its exclusive agent in identifying, advising and assisting the Debtor with the execution of various capital strategies and options for the Property.

5.      The Debtor believes that the appointment of SMRA in this case will be beneficial to the estate. SMRA's services and expertise will greatly assist the Debtor to arrange a capital event for the Property, and that it is necessary to employ the SMRA to do this. The Debtor believes that it is in the best interests of the estate and its economical administration that SMRA be authorized to act on behalf of the estate in this capacity. Further, the Debtor believes employment of SMRA retroactive to the Petition Date is appropriate because (i) SMRA has in fact been working on the Debtor's behalf throughout the case, and (ii) because of SMRA's compensation structure, retroactive approval of employment will cost the estate nothing.

**II.**

**TERMS AND SCOPE OF EMPLOYMENT**

6.      SMRA will assist the Debtor to arrange a capital event for the Property, which may include obtaining financing, finding a buyer for a sale of the Property, or another strategy.

7.      SMRA is well qualified for the role, and its services will not replicate or overlap the services to be rendered by any other professionals to be employed by the Debtor. The Debtor has not employed any other real estate agent or financial advisor, and it has no plans at this time to do so. In fact, SMRA is to be engaged as the Debtor's exclusive agent.

8.    The terms of SMRA's proposed employment are described in a letter agreement, dated as of August 28, 2023 (as modified and extended, the "Letter Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**. The term of the Letter Agreement was extended by an addendum of October 31, 2023, and by another addendum of December 15, 2023. The term of the Letter Agreement now runs through March 31, 2024.

9.    True and correct copies the addenda are attached hereto as **Exhibits B** and **C**. The Letter Agreement provides for the following fee structure[1]:

(i)    Debt - If SMRA arranges financing that refinances all or a portion of the existing first trust deed loan with Buchanan Mortgage Holdings (the "Buchanan Loan"), but excluding an extension of any portion of the current Buchanan Loan, and SMRA secures a loan commitment for a new senior loan (the "Senior Debt") then Debtor agrees to pay SMRA a Fee equal to one percent (1.00%) of the gross amount of the Senior Debt committed to by the capital source.

If SMRA arranges financing that would be subordinate to either the Buchanan Loan or the senior debt, i.e. a mezzanine loan or preferred equity (the "Structured Capital"), then Debtor agrees to pay SMRA a Fee equal to three percent (3.00%) of the gross amount of the Structured Capital committed to and funded by the capital source. In the event all or a portion of the Structured Capital is subordinated by the Buchanan Loan, then, SMRA shall not be paid any Fee(s) on the Buchanan portion of the Structured Capital investment.

(ii)    Joint Venture - if SMRA arranges for a joint venture with a capital source that invests capital for a partnership interest in either the existing ownership entity or a newly formed entity in which the Debtor and the capital source are partners (the "Joint Venture"), then, Debtor agrees to pay SMRA a Fee equal to five percent (5.00%) of the amount committed by the capital source.

(iii)    Sale - If SMRA arranges an outright sale of the Property with a capital source that acquires the property in whole, (the "Sale"), then, the Debtor agrees to pay SMRA a Fee equal to three percent (3.00%) of the amount of the gross sales price committed by the capital source.

(iv)    Monthly Advisory Fees[2] – The Debtor agrees to pay SMRA a monthly financial advisory fee (the "Monthly Financial Advisory Fee") in the amount of ten thousand dollars ($10,000) per month [qualified as described below]. The Monthly Advisory Fee shall be due and payable on the first day of each month beginning January 1, 2023 and the 1st day of each succeeding month thereafter until Letter Agreement terminates.

---

[1] This summary is qualified in its entirety by the terms of the Letter Agreement itself.

[2] This fee is described in the December 15, 2023 addendum.

In the event SMRA secures on behalf of the Debtor, and the Debtor closes on any of the capital events described in the Agreement, or any other to be determined financial structure, the advisory fees earned by, and due and payable to SMRA, shall be offset by the total amount of Monthly Advisory Fees that were paid to SMRA by the Debtor.

10.    Notwithstanding item (iv) above, the Debtor's principal, James Eleopoulos, will pay the Monthly Advisory Fee, not the Debtor. This arrangement benefits the estate, because the fees will provide a dollar-for-dollar reduction in the cost to the Debtor of consummating the above-described transactions.

11.    SMRA has been advised that the Court's standard terms apply and the practical effect of those terms, including that SMRA cannot be compensated from estate assets without prior Court approval. To that end, the December 15, 2023 addendum provides: "Notwithstanding that which is contained in the Agreement, and the addendum, and this second addendum to the Agreement, SMRA acknowledges that any Bankruptcy Court rulings or order shall have . . . precedence over any of these agreements." That said, SMRA and the Debtor maintain that Mr. Eleopoulos may pay the Monthly Advisory Fees without prior Court approval.

12.    The primary person at SMRA who will provide services to the Debtor is Barry Simson. A true and correct copy of Mr. Simson's resume is attached hereto as **Exhibit D**. SMRA partner Philip Benditson will also provide services from time to time.

13.    Attached hereto as **Exhibit E** is a form of proposed order (the "Proposed Order") approving SMRA's employment, which SMRA has reviewed and consented to.

### III.

### SMRA IS DISINTERESTED

14.    To the best of the Debtor's knowledge and, as set forth in the annexed Declaration re Disinterestedness of Barry Simson, the Debtor believes that SMRA fits the definition of "disinterested persons" within the meaning of Section 101(14) of the Bankruptcy Code and that SMRA does not hold any interest adverse to the estate.

15.    To the best of the Debtor's and SMRA's knowledge, SMRA does not have any connections to the Debtor, creditors in this case, any other party in interest, their respective attorneys

4

and/or accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as disclosed herein.

16.    Neither SMRA nor any of its professionals are, or were, within three years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

17.    SMRA does not have any pre-petition claims against the Debtor. SMRA has not received, and has no present plans to receive, any lien or other interest in property of the Debtor or of a third party to secure payment of SMRA's fees.

**IV.**

**<u>NOTICE OF THE APPLICATION IS SUFFICIENT</u>**

18.    A notice advising creditors and other interested parties of this Application by the Debtor to employ SMRA as real estate agent and financial advisor, and summarizing the contents of this Application, has been filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2). A copy of the Notice of Application of Debtor and Debtor-In-Possession to Employ Real Estate Agent is attached hereto as **Exhibit F**.

**V.**

**<u>CONCLUSION</u>**

WHEREFORE, the Debtor requests that it be authorized to employ SMRA as its real estate agent in this case effective as of December 1, 2023, on the terms and conditions set forth herein.

Dated: January 19, 2024                    G&B LAW, LLP,

By: _____
JEREMY H. ROTHSTEIN
Attorneys for Debtor and Debtor-in-Possession
Crown Jewel Properties, LLC

**DECLARATION RE DISINTERESTEDNESS OF BARRY SIMSON**

**FOR EMPLOYMENT OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**

I, Barry Simson, declare:

1.      Name, address and telephone number of the professional (the "Professional") submitting this Declaration:

SM REALTY ADVISORS CORP.
Real Estate Investment Banking
c/o Barry Simson, Partner
5739 Kanan Road, # 464
Agoura Hills, California 91301
Phone: (310) 457-9441
Email: barry@smrealtyadvisors.com

2.      As the Debtor's real estate agent and financial advisor, I would perform the services described in the Letter Agreement attached hereto as **Exhibit A** and the addendum attached hereto as **Exhibit C**.

3.      I am the primary person at SMRA who will provide services to the Debtor. A true and correct copy of my resume is attached hereto as **Exhibit D**. Partner Philip Benditson will also provide services from time to time.

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are: N/A

5.      The investigation of disinterestedness made by the Professional prior to submitting this Declaration consisted of: I have reviewed the Professional's files of past clients. I have not been involved with any prior sale or transactions on this property. The Professional has not represented any creditor or other party in interest, nor have I.

6.      The Professional has viewed the Property and discussed marketing the same with the Debtor.

7.      The Professional is not a creditor, an equity security holder or an insider of the Debtor, except as follows: None

8.    The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

9.    The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

10.    The Professional is a highly experienced and well qualified to serve as the Debtor's real estate agent and financial advisor. The Professional will be able to render services in this case economically and efficiently. The Professional understands its compensation in this case is subject to the approval of this Court.

11.    The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary): None

12.    Name, address and telephone number of the person signing this Declaration on behalf of the Professional and the relationship of such person to the Professional (specify): See paragraph 1.

13.    The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary): None.

14.    I have reviewed the proposed order attached hereto as **Exhibit E** and consent to its terms.

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 7 through 13 are stated on information and belief. Executed on this 16th day of January, 2024.

BARRY SIMSON

2411903.2 - 32278.0005

# EXHIBIT A

## SM REALTY ADVISORS
**Real Estate Investment Banking**
**5699 Kanan Road, # 464**                                    Telephone (310) 457-9441
**Agoura Hills, California 91301**                            Facsimile (310) 919-3993

August 28, 2023

Mr. James Eleopoulos
1860 Obispo Avenue, Suite F
Long Beach, CA 90755

Re:    Advisory work for an approximate 12.5-acre development site located at the southeast corner of
       Jefferson Street and the 78 Freeway in Oceanside, CA, encompassing APNs 165-120-56 and 156-301-17
       (and as further described on <u>EXHIBIT "A"</u> attached hereto and hereinafter referred to as the "Property").

Dear Jimmy,

Whereas Crown Jewel Properties, LLC, is owner of the Property, and whereas the Property is currently subject
to a foreclosure proceeding, and a Trustee Sale has been scheduled for the Property on November 1, 2023,
and whereas Crown Jewel Properties, LLC seeks to avoid the Trustee Sale, it is hereby agreed as follows:

By way of this Agreement and its terms and conditions contained herein, Crown Jewel Properties, LLC
("Client") elects to retain SM Realty Advisors ("SMRA") to act as its exclusive agent in identifying, advising and
assisting Client with the execution of various capital strategies and options for the Property with the goal to
dismiss the Trustee Sale.  Some, but not all of the potential capital strategies are further described below in
Paragraph 2 and are hereinafter referred to as a "Capital Event."   SMRA accepts such engagement and
appointment, and the parties agree to the following terms and conditions:

1.  <u>Term</u>
    For the period beginning August 21, 2023, and ending on October 31, 2023 (the "Term"), Client grants
    SMRA the exclusive right to arrange a Capital Event for the Property.  If at the end of the Term, the
    Client is still in negotiations with <u>any</u> lender(s), investor(s) or capital source(s) either introduced
    directly to Client by SMRA, another broker or finder, or previously known to Client (collectively
    referred to herein as a "Capital Source"), the Term will be automatically extended, contingent upon
    and for the period of a forbearance of the Trustee Sale, or until such time as the Capital Source closes
    on a Capital Event, or material negotiations with the Capital Source have ceased and the Client has
    indicated in writing that it elects not to proceed any further with the Financing negotiations, whichever
    shall first occur.

2.  <u>Advisory Fees</u>
    SMRA shall, after a full evaluation of all the information on the Property, make recommendations to
    Client of the type and combination of potential strategies that may be required to dismiss the Trustee
    Sal. If, prior to the expiration of the Term or any extension thereof, any Capital Source commits and
    closes the Capital Event, then Client agrees to pay SMRA an Advisory Fee ("Fee") based on the
    following:

    A)  Debt - If SMRA arranges financing that refinances all or a portion of the existing first trust deed
        loan with Buchanan Mortgage Holdings (the "Buchanan Loan"), but excluding an extension of any
        portion of the current Buchanan Loan, and SMRA secures a loan commitment for a new senior
        loan (the "Senior Debt") then Client agrees to pay SMRA a Fee equal to one percent (1.00%) of the
        gross amount of the Senior Debt committed to by the Capital Source.



If SMRA arranges financing that would be subordinate to either the Buchanan Loan or the Senior Debt, i.e. a mezzanine loan or preferred equity (the "Structured Capital"), then Client agrees to pay SMRA a Fee equal to three percent (3.00%) of the gross amount of the Structured Capital committed to and funded by the Capital Source. In the event all or a portion of the Structured Capital is subordinated by the Buchanan Loan, then, SMRA shall not be paid any Fee(s) on the Buchanan portion of the Structured Capital investment.

B) Joint Venture – If SMRA arranges for a joint venture with a Capital Source that invests capital for a partnership interest in either the existing ownership entity or a newly formed entity in which Client and the Capital Source are partners (the "Joint Venture"), then, Client agrees to pay SMRA a Fee equal to five percent (5.00%) of the amount committed by the Capital Source.

C) Sale – If SMRA arranges an outright sale of the Property with a Capital Source that acquires the property in whole, (the "Sale"), then, Client agrees to pay SMRA a Fee equal to three percent (3.00%) of the amount of the gross sales price committed by the Capital Source.

The above-mentioned Capital Events may not the only possibilities and that if an alternative option is determined to be a better option for the Client then Client and SMRA will negotiate a mutually agreed upon Fee prior to the Client entering into negotiations with the Capital Source.]

Regarding the payment of said Fee(s) above for either the Senior Debt, the Structured Capital, the Joint Venture, or the Sale (SMRA may arrange any combination of the above); the Fee(s) shall be fully earned by SMRA upon acceptance of a commitment by Client and fully due and payable from the proceeds of the initial funding of the Capital Event.  Client shall authorize the escrow holder to pay SMRA its Fee(s) out of the initial funding of the Capital from the escrow.

In the event Client has met all reasonable requirements of the Capital Source and Capital Source fails to fund the Capital Event, then the Fee shall not be considered earned by SMRA. In the event Client accepts the commitment of the Capital Source and then fails to meet the reasonable requirements for a funding of the Capital Event, and therefore the Capital Source elects not to fund, then the Fee(s) shall be considered earned, and due and payable within 30 days of the expiration of the commitment from the Capital Source.

Notwithstanding the above, in the event Client sells the Property to JPI (or any affiliate, or newly formed entity in which JPI is a partner), or JMI Realty (or any affiliate, or newly formed entity in which JMI is a partner), then SMRA shall only be entitled to a one and a half percent (1.50%) Fee of the gross sales price.

3. Continuing Relationship

If within twenty-four (24) months after the expiration of the Term or any extension thereof, any commitment is issued by any Capital Source whom SMRA introduced to Client during the term of this Agreement (or any other related entity in which and any of its members, partners, managers and/or affiliated entities are a part of), and Client accepts the commitment and the capital event at that time is funded, then the Client agrees to pay SMRA a fee upon funding of the Capital Event.  The amount of the Fee shall be equal to one percent (1.00%) of the total gross amount of the Capital Event by the Capital Source at that time.

4. Indemnity

Client shall indemnify, defend, protect, and hold SMRA harmless from and against any and all actual out-of-pocket losses, costs, damages or expenses incurred by SMRA related to or arising out of any action, suit, or proceeding instituted by any Lender that names SMRA as a defendant due to the fact that Client supplied materially incorrect information or failed to disclose any material fact known to Client during the transaction.



5.  Representations and Warranties
    Client hereby represents, warrants and agrees that: (i) it has the right, power and authority to enter into this Agreement and to consummate the transactions contemplated hereby; (ii) it is authorized to conduct business under the laws of the State of California; and (iii) all required consents have been obtained in connection with this agreement and no consent of any other person or entity is required. Client shall use its reasonable efforts to keep SMRA apprised of its progress in its negotiations with the Lenders, if any.

    Client acknowledges that SMRA cannot be responsible for guaranteeing the performance of the Capital Source and SMRA shall not be liable to Client for any damages and costs incurred by Client due to the inability of SMRA to secure the Financing.

6.  Disputes
    If any dispute arises between Client and SMRA regarding this Agreement, the parties agree to binding arbitration in Los Angeles County, pursuant to the rules of the American Arbitration Association. Should it be necessary for any party to enforce the terms of this agreement, then the prevailing party in any action or proceeding shall be entitled to recover from the losing party any amounts awarded pursuant to the arbitration, and all reasonable costs and expenses of the prevailing party incurred in connection with such arbitration, including but not limited to reasonable fees and expenses.

8.  Miscellaneous
    (a)  All information provided to SMRA pursuant to this Agreement shall be kept confidential by SMRA and only made available to persons at the Lender. Client shall not disclose the contents of any proprietary materials prepared by SMRA and submitted to Client without prior written consent of SMRA.
    (b)  It is recommended that all documents related to the Financing be reviewed by Client's attorney.
    (c)  This Agreement supersedes all previous agreements whether written or oral, between SMRA and Client and is the final and complete agreement between the parties.

Please sign where indicated below, confirming your acceptance of the terms and conditions outlined herein, and then return a copy of this executed Agreement to SMRA.

Very truly yours,

SM Realty Advisors

By: _____
      Barry Simson
      Partner

[Intentionally left blank]

Agreed and accepted this ___30th___ day of ___Sept_____ 2023

Crown Jewel Properties, LLC,


By: _____
     James Eleopoulos, Sole Member

<u>**EXHIBIT "A"**</u>

The following is the legal description of the Property, which represents the real property collateral for the transaction.

The Land referred to below is situated in the County of San Diego, City of Oceanside and City of Carlsbad, State of California, and is described as follows:

TRACT ONE:

Parcel 1:

That portion of the North half of Section 31,Township 11 South, Range 4 West, San Bernardino Meridian, in the City of Oceanside, in the County of San Diego, State of California, according to Official Plat thereof, described as follows:

Commencing at the Southeast corner of the North half of said Section 31; thence along the Southerly line of said North half of the North half, North 89° 41' 21" West 2503.80 feet to a point on the Easterly boundary of Parcel 1 of California State Highway 11-SD-78 as described in deed to the State of California, recorded March 1, 1971 as Instrument No. 37628 of Official Records, said boundary being a curve concave to the West having a radius of 72.00 feet, a central angle of 86° 49' 15", an arc length of 109.10 feet and said point being the true point of beginning; thence along said boundary Northwesterly along the said curve through a central angle of 66° 30' 35", an arc length of 88.58 feet to the Northwesterly terminus thereof; and North 83° 41' 13" West 38.16 feet, to a point of the Southeasterly line of that portion of California State Highway 11-SD-78 as described in Parcel 2 in deed to the State of California, recorded May 28, 1971 as Instrument No. 112979 of Official Records; thence along said Southeasterly line North 27° 36' 27" East 28.01 feet to the most Southerly corner of said land described in Parcels 2 and 3 in Director's Deed to Bernard Citron, et al, recorded October 10, 1973 as Instrument No. 73-285468 of Official Records; thence along the boundary of said Parcels 2 and 3 as follows:

North 62° 23' 33" West 42.50 feet, North 18° 54' 14" East 93.58 feet to the Westerly corner of land described in Parcel 1 in the City of Oceanside Resolution No. 83-317, recorded January 13, 1984 as Instrument No. 84-014517 of Official Records, thence along the boundary line of said Parcel 1 North 18° 54' 14" East 19.58 feet thence North 74° 28' 24" East 66.28 feet, thence North 67° 38 '5" East 64.77 feet to an angle point in the boundary of Parcel 1 in said Director's Deed per Instrument No. 73-285468 of Official Records, thence along the boundary of said Parcel 1, of said Director's Deed North 67° 38' 5" East 59.66 feet, thence North 64° 14' 54" East 116.83 feet, thence North 75° 00' 23" East 93.84 feet, thence North 78° 41' 29" East 196.62 feet, thence North 88° 6' 26" East 249.81 feet, being a point on the Southerly line of that portion of said California State Highway 11-SD-78 as described in Parcel 3 in said deed to the State of California last hereinabove referred to, thence along said Southerly line North 88° 00' 18" East 402.93 feet to the Northwesterly corner of the land described in the Deed to City of Oceanside, recorded March 9, 1981 as Instrument No. 81-071274 of Official Records; thence along the Westerly boundary of said land, South 313.78 feet (312.85 feet per said deed); thence South 46° 36' 53" West 143.87 feet to the Southerly line of said North half of the North half of Section 31; thence Westerly along said Southerly line North 89° 41' 21" West 1028.60 feet to the true point of beginning.

Parcel 2:

Parcel 2 of Parcel Map No. 15975, in the City of Carlsbad, County of San Diego, State of California, filed in the Office of the County Recorder of San Diego, February 2, 1990 as Instrument No. 90-062247 of Official Records.

Parcel 3:

A non-exclusive easement for roadway purposes for pedestrian and vehicular access, ingress and egress sewer, water, drainage, gas without limitation, an easement for the purpose of maintenance and repair of any such utilities, over along and across that portion of Parcel 1 of Map No. 15975, in the City of Carlsbad, County of San Diego, State of California filed in the Office of the County of said County, February 2, 1990 as Instrument No. 90-062247 of Official Records, described as follows:

Commencing at a point on the Easterly right of way line of Jefferson Street said point being the common West corner of said Parcel 1 and Parcel 2 of said Parcel Map No. 15975, said point also being the beginning of a 758.00 foot radius curve concave Easterly, a radial to said point bears North 73° 16' 27" West thence Southerly along said Easterly right of way line and curve through a central angle of 3° 22' 39" an arc distance of 44.68 feet, thence tangent to said curve South 13° 20' 54" West 29.18 feet to the beginning of a tangent 200.00 foot radius curve concave Easterly; thence Southerly along said curve through a central angle of 21° 10' 37" an arc distance of 73.92 feet, thence tangent to said curve South 7° 49' 43" East 121.36 feet to the beginning of a tangent 537.68 foot radius curve concave Easterly; thence Southerly along said curve through a central angle of 6° 08' 47" an arc distance of 57.68 feet; thence tangent to said curve South 13° 58' 30" East 13.11 feet to the true point of beginning; thence leaving said Easterly right of way line North 76° 06' 33" East 125.09 feet to the beginning of a tangent 253.00 foot radius curve concave Southerly; thence Easterly along said curve through a central angle of 26° 13' 51' an arc distance of 111.41 feet to the beginning of a tangent reverse 134.00 foot radius curve concave Northerly, thence Easterly along said curve through a central angle of 20° 21' 18° an arc distance of 47.61 feet of the beginning of a tangent compound 18.00 foot radius curve concave Northwesterly; thence Easterly and Northerly along said curve; through a central angle of 69° 10' 48" an arc distance of 21.73 feet; thence tangent to said curve, North 11° 48' 18" East 58.22 feet to the beginning of a tangent 119.00 foot radius curve concave Westerly; thence Northerly along said curve through a central angle of 11° 23' 12" an arc distance of 23.65 feet; thence tangent of said curve North 0° 25' 6" East 67.72 feet, thence North 75° 3' 3" East 33.19 feet, thence South 0° 25' 6" West 76.51 feet to the beginning of a tangent 151.00 foot radius curve concave Westerly; thence Southerly along said curve through a central angle of 11° 23' 12" an arc a distance of 30.01 feet; thence tangent to said curve South 11° 48' 18" West 128.74 feet; thence North 78° 11' 42" West 69.96 feet to the beginning of a tangent 69.00 foot radius curve concave Southerly; thence Westerly along said curve through a central angle of 25° 41' 45"an arc distance of 30.54 feet, thence tangent to said curve South 76° 06' 33" West 202.51 feet more or less to a point on the aforementioned Easterly right of way line North 13° 58' 30" West 67.00 feet to the true point of beginning.

Parcel 4:

An easement for the construction and maintenance of a bridge, bridge abutment, bridge supports and/or other bridge facilities, including ramps, access drives and/or slopes, as well as a non-exclusive easement for sewer, water, drainage, gas telephone, electrical and all other utility purposes, including without limitation, an easement for the purpose of maintenance and repair of any such utilities over, along and across that portion of Parcel 1 of Parcel Map No. 15975, in the City of Carlsbad, County of San Diego, State of California, filed in the Office of the County Recorder of San Diego County, February 2, 1990 as Instrument No. 90-062247 of Official Records, described as follows:

Commencing at a point in the Easterly right of way line of Jefferson Street, said point being the common west corner for said Parcel 1 and Parcel 2 of said Parcel Map No. 15975, said point also being the beginning of a 758.00 foot radius curve concave Easterly, a radial to said point bears North 73° 16' 27" West; thence Southerly along said Easterly right of way line and curve through a central angle of 3° 22' 39" an arc distance of 44.60 feet; thence tangent to said curve South 13° 20' 54" West 29.18 feet to the beginning of a tangent 200.00 foot radius curve concave Easterly; thence Southerly along said curve through a central angle of 21° 10' 37", an arc distance of 73.92 feet; thence tangent to said to said curve South 7° 49' 43" East 121.36 feet to the beginning of a tangent 537.68 foot radius curve concave Easterly; thence Southerly along said curve through a central angle of 6° 8' 47" an arc distance of 57.68 feet; thence tangent to said curve South 13° 58' 30" East 13.11 feet, thence leaving said Easterly right of way line North 76° 6' 33" East 125.09 feet to the beginning of a tangent 253.00 foot radius curve concave Southerly; thence Easterly along said curve through a central angle of 25° 13' 31" an arc distance of 111.41 feet to the beginning of a tangent reverse 134.00 foot radius curve concave Northerly; thence Easterly along said curve through a central angle of 20° 21' 18" an arc distance of 47.61 feet to the beginning of a tangent compound 18.00 foot radius concave Northwesterly; thence Easterly and Northerly along said curve, through a central angle of 69° 10' 48" an arc distance of 21.73 feet; thence tangent to said curve, North 11° 48' 18" East 58.22 feet to the beginning of a tangent 119.00 foot radius curve concave Westerly; thence Northerly along said curve through a central angle of 11° 23' 12" an arc distance of 23.65 feet; thence tangent to said curve North 0° 25' 6" East 67.72 feet to the true point of beginning; thence North 89° 34' 54" West 30.00 feet; thence North 0° 25' 6" East 120.98 feet more or less to a point on the common East-West line between said Parcels 1 and 2, thence along said common line North 82° 29' 13" East 92.89 feet; thence leaving said common line South 0° 25' 6" West 125.00 feet; thence North 89° 34' 54" West 30.00 feet; thence South 75° 3' 3" West 33.19 feet to the true point of beginning.

Parcel 5:

A Non-exclusive easement for the passage of pedestrians and vehicles ("Roadway Easement"), as set forth conveyed and described in that certain Restated and Amended Access Agreement and Agreement Establishing Parking Restrictions, recorded August 13,1986 as Instrument No. 86-347146 of Official Records, and as modified by a Supplement to Restated and Amended Access Agreement and Agreement Establishing Parking Restrictions recorded August 13,1986 as Instrument No. 86-347147 of Official Records, and as further modified by a Supplement to Access Agreement and Agreement Establishing Parking Restrictions recorded May 26,1994 as Document No. 94-0346086 of Official Records, and a Roadway Easement Maintenance Agreement and Assignment of Bridge Abutment Easement Rights, recorded March 31, 1998 as Document No. 98-0177036 of Official Records.

Assessor's Parcel No: 156-301-17 and 165-120-56

The Land referred to below is situated in the County of Los Angeles, City of Signal Hill, State of California, and
is described as follows:

TRACT TWO:

Lot 16, of Tract No. 4143, in the City of Signal Hill, County of Los Angeles, State of California, as per Map recorded in Book 117, Page(s) 69-70 of Maps, in the Office of the County recorder of said County.

APN: 7148-003-019

# EXHIBIT B

## SM REALTY ADVISORS
**Real Estate Investment Banking**
**5699 Kanan Road, # 464**
**Agoura Hills, California 91301**

**Telephone (310) 457-9441**
**Facsimile (310) 919-3993**

October 31, 2023

Mr. James Eleopoulos
1860 Obispo Avenue, Suite F
Long Beach, CA 90755

Re:   Advisory work for an approximate 12.5-acre development site located at the southeast corner of
Jefferson Street and the 78 Freeway in Oceanside, and Carlsbad CA, encompassing APNs 165-120-
56 and 156-301-17 and hereinafter referred to as the "Property").

Dear Jimmy,

This is an addendum which shall be attached to and made a part of the Advisory Fee Agreement
("Agreement") dated August 28, 2023, which was entered into between Crown Jewel Properties LLC
("Client") and SM Realty Advisors ("SMRA").

The parties to the Agreement hereby agree to the following:

The expiration date of the Term shall be extended from October 31, 2023, to November 30, 2023.

In all other respects the Agreement shall remain unchanged and in full force and effect.

Very truly yours,

SM Realty Advisors

By: _____
    Barry Simson
    Partner

Agreed and accepted this _____ day of November, 2023

Crown Jewel Properties, LLC,

By: _____
    James Eleopoulos
    Sole Member

# EXHIBIT C

# SM REALTY ADVISORS

## Real Estate Investment Banking

| 5699 Kanan Road, # 464 | Telephone (310) 457-9441 |
|---|---|
| Agoura Hills, California 91301 | Facsimile (310) 919-3993 |

December 14, 2023

Mr. James Eleopoulos
Crown Jewel Properties LLC
1860 Obispo Avenue, Suite F
Long Beach, CA 90755

Re:    Financial Advisory work for an approximate 12.5-acre development site located at the southeast
corner of Jefferson Street and the 78 Freeway in Oceanside, CA, encompassing APNs 165-120-56
and 156-301- and hereinafter referred to as the "Property").

Dear Jimmy,

This second addendum (the "Second Addendum"), is hereby attached to, and made a part of the
Advisory Fee Agreement ("Agreement") dated August 21, 2023, which was previously modified by letter
amendment on October 31, 2023 (the "Amendment"), and both agreements having been entered and
agreed to by Crown Jewel Properties LLC ("Client") and SM Realty Advisors ("SMRA"), collectively the
"Parties".

The Parties to the Agreement, as modified by the Amendment, hereby agree to the following:

The expiration date of the Term shall be extended from October 31, 2023 to March 31, 2024 (the
"Second Extension Period").

Due to circumstances that have evolved with Client, and as Client desires to have the ongoing real estate
and financial advisory services of SMRA during its Chapter 11 Bankruptcy proceeding, for the Second
Extension Period, the Client agrees to pay SMRA a monthly financial advisory fee (the "Monthly Financial
Advisory Fee") in the amount of ten thousand dollars ($10,000) per month. The Monthly Advisory Fee
shall be due and payable on the first day of each month beginning January 1, 2023 and the 1st day of
each succeeding month thereafter until Client elects to terminate.

In the event SMRA secures on behalf of the Client, and the Client closes on any of the Capital Events
described in the Agreement, or any other to be determined financial structure, the Advisory Fees earned
by, and due and payable to SMRA, shall be offset by the total amount of Monthly Advisory Fees that
were paid to SMRA by Client.

Notwithstanding that which is contained in the Agreement, and the addendum, and this second
addendum to the Agreement, SMRA acknowledges that any Bankruptcy Court rulings or order shall have
have precedence over any of these agreements.

In all other respects the Agreement, as modified by the first addendum dated October 31, 2023, and this
second addendum shall remain unchanged and in full force and effect.

1

Very truly yours,

SM Realty Advisors

By: _____
        Barry Simson
        Partner

[Intentionally left blank]

Agreed and accepted this __15th____ day of __December_____ 2023

Crown Jewel Properties, LLC,

By: _____
        James Eleopoulos
        Sole Member

**EXHIBIT D**

**<u>Barry Simson - Resume</u>**

I have worked in the real estate industry for over 35 years, both as an intermediary and as a capital provider. I was previously a Senior Director at Finova Capital (a former NYSE listed public finance company and a significant bridge and permanent real estate lender during the 90s), where I was one of that company's top producers nationally. Prior to Finova, I was a Director with Belgravia Capital, a national mortgage banking firm, that was eventually acquired by Finova. Prior to that I was a partner at Schwartz Simson Realty - an independent real estate investment banking practice in Los Angeles, CA. Mr. Simson is a licensed California real estate agent.

I am currently a partner with SM Realty Advisors ("SMRA"), a boutique real estate investment banking firm based in Los Angeles. The firm is active throughout the U.S. with a focus on California. SMRA is a multi-faceted firm with a business platform that is comprised of three main areas of focus:

- **Real Estate Finance** - we are expert at arranging and structuring all forms of financing, including debt, mezzanine, or equity capital for our clients
- **Real Estate Acquisitions** - we assist our clients in their investment and acquisition goals, by seeking out high quality "*off - market*" investment opportunities for them and represent them in those acquisitions
- **Real Estate Advisory Services** - we advise our clients on a variety of real estate strategies, including, financing, development, acquisitions, dispositions, and work-outs

We are active in a broad variety of property types across the U.S. including office, retail, industrial, hospitality, multi-family, student housing, healthcare, residential condos, mixed-use properties, and land and with transactions that generally have a capitalization starting at $10 million on up to $100 million or more. My partner and I have over 70 years of collective experience in the real estate industry encompassing over $1 billion of deal execution. We offer a very high level of service, and provide a creative approach to more complex transactions. We offer all the benefits of some of the larger national firms, but with a much more effective and personalized experience.

# EXHIBIT E

1  DOUGLAS M. NEISTAT, ESQ. (State Bar No. 055961)
   dneistat@gblawllp.com
2  JEREMY H. ROTHSTEIN, ESQ. (State Bar No. 316140)
   jrothstein@gblawllp.com
3  G&B LAW, LLP
   16000 Ventura Boulevard, Suite 1000
4  Encino, California 91436
   Tel: (818) 382-6200 • Fax: (818) 986-6534

5

6  [Proposed] Attorneys for Debtor and Debtor-in-Possession
   Crown Jewel Properties, LLC

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10               **LOS ANGELES DIVISION**

11 In re                                    Case No.: 2:23-bk-17999-NB

12 CROWN JEWEL PROPERTIES, LLC,            (Chapter 11)

13         Debtor.                         **ORDER GRANTING APPLICATION TO
                                           EMPLOY SM REALTY ADVISORS
14                                         CORP. AS REAL ESTATE AGENT FOR
                                           DEBTOR AND DEBTOR IN
15                                         POSSESSION NUNC PRO TUNC AS OF
                                           DECEMBER 1, 2023**
16

17

18

19

20         Based upon this Court's review of the Application to Employ SM Realty Advisors Corp. as

21 Real Estate Agent for Debtor and Debtor in Possession Nunc Pro Tunc as of December 1, 2023 (the

22 "Employment Application") of Crown Jewel Properties, LLC, debtor and debtor-in-possession, in

23 the above entitled case (the "Debtor"), to employ SM Realty Advisors Corp., a California

24 corporation ("SMRA") as its real estate advisor, the notice of the Application appearing proper, no

25 opposition to the Motion having been filed, the record in this case, and good cause appearing

26 therefor,

27

28

                                              1

IT IS HEREBY ORDERED, that the Employment Application is granted and Debtor is hereby authorized to employ SMRA, as its brokers effective as of December 1, 2023, per the terms and conditions set forth in the Employment Application.

IT IS FURTHER ORDERED that, notwithstanding the provisions of Letter Agreement (as defined in the Employment Application), Judge Bason's standard terms apply (unless struck through): (a) employment is per 11 U.S.C. § 327 not § 328; (b) payment only per 11 U.S.C. § 330(a) – no lien or superpriority claim is allowed (except as explicitly allowed – *e.g.*, realtor commissions on court-approved sales); (c) maximum 2 hours per day of nonworking time (*e.g.*, travel, or waiting for matter to be called) absent an adequate explanation; (d) no buyers' premium for auctioneers; (e) no dual agency; (f) all matters relating to the professional's engagement, compensation and costs shall be resolved in this court, notwithstanding any provisions for arbitration, choice of venue, or the like, and (g) any indemnification, limitation of damages or the like (including paragraph 12 of the Letter Agreement) is ineffective. *See generally In re Circle K Corp.*, 279 F.3d 669 (9th Cir. 2002) *and* 11 U.S.C. § 327(a) (professionals may not "hold or represent an interest adverse to the estate").

IT IS FURTHER ORDERED, for the avoidance of doubt, that this Order does not authorize the Debtor to pay SMRA the Monthly Financial Advisory Fee (as defined in the Employment Application)

# # #



2418075.1 - 32278.0005

**EXHIBIT F**

DOUGLAS M. NEISTAT, ESQ. (State Bar No. 055961)
dneistat@gblawllp.com
JEREMY H. ROTHSTEIN, ESQ. (State Bar No. 316140)
jrothstein@gblawllp.com
G&B LAW, LLP
16000 Ventura Boulevard, Suite 1000
Encino, California 91436
Tel:  (818) 382-6200 • Fax: (818) 986-6534

Attorneys for Debtor and Debtor-in-Possession
Crown Jewel Properties, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| In re: | Case No.: 2:23-bk-17999-NB |
|---|---|
| CROWN JEWEL PROPERTIES, LLC, | (Chapter 11) |
| Debtor and Debtor-in-Possession. | **NOTICE OF APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY SM REALTY ADVISORS CORP. AS REAL ESTATE AGENT FOR DEBTOR AND DEBTOR IN POSSESSION NUNC PRO TUNC AS OF DECEMBER 1, 2023**<br><br>[No Hearing Required] |

TO THE HONORABLE NEIL BASON, UNITED STATES BANKRUPTCY JUDGE, AND

ALL PARTIES ENTITLED TO RECEIVE NOTICE:

**NOTICE IS HEREBY GIVEN** that the Debtor has filed an Application for Employment of

SM Realty Advisors Corp. ("SMRA") as Debtor's brokers with the employment to be effective as of

December 1, 2023.

By this Application, Debtor seeks authority to employ SMRA to assist the Debtor in obtaining

financing regarding Debtor's only asset, which is a vacant 12.5 acre contiguous site.  The Debtor

believes that the appointment of SMRA in this case will be beneficial to the estate.  SMRA's services

and expertise will greatly assist the Debtor finding potential financing sources, joint venturers, or

1

1  purchasers, and that it is necessary to employ the SMRA to do this. The Debtor believes that it is in

2  the best interests of this estate and its economical administration that SMRA be authorized to act on

3  behalf of the estate for those purposes.

4      **NOTICE IS FURTHER GIVEN**, that based on the terms of the letter agreement (the "Letter

5  Agreement") dated as of August 28, 2023, a true and correct copy of which is attached as Exhibit A

6  to the Application. The terms of the Letter Agreement its terms were extended by an addendum of

7  October 31, 2023, and extended and modified by an addendum of December 15, 2023, copies of which

8  are attached to the Application as Exhibits B and C, respectively. The term of the Letter Agreement

9  now runs through March 31, 2024.  SMRA will be paid a monthly advisory fee of $10,000 but will be

10  paid by the Debtor's sole member, James Eleopoulos, not by the Debtor or from estate assets. In

11  addition, SMRA will be paid a fee based on the gross proceeds of possible transactions it may arrange:

12  1% of senior secured debt, 3% of subordinate secured debt, 5% of the capital committed by a joint

13  venturer, or 3% of a sale price.[1]



14      **NOTICE IS FURTHER GIVEN** that SMRA does not hold or represent any interests adverse

15  to the Debtor.  SMRA is disinterested within the meaning of 11 U.S.C. § 101(14), and the employment

16  of SMRA is in the best interests of the Debtor.

17      Neither the Debtor nor SMRA has any connection to any creditors in this case, any other party

18  in interest, their respective attorneys and/or accountants, the United States trustee, or any person

19  employed in the office of the United States trustee, except for the anticipated payment of monthly fees

20  by Mr. Eleopoulos, described above.

21      **NOTICE IS FURTHER GIVEN** that SMRA will comply with the requirements of Section

22  330 of the Bankruptcy Code regarding compensation.

23      **NOTICE IS FURTHER GIVEN** that a copy of the application may be obtained from

24  proposed counsel for the Debtor whose name, address, telephone number, fax number and e-mail

25  address are located in the upper left-hand corner of this Notice.

26

27

28

---

[1] This summary is qualified in its entirety by the terms of the Letter Agreement itself.

1    **NOTICE IS FURTHER GIVEN** that in accordance with Local Bankruptcy Rule 2014-

2    1(b)(3)(E), any response and request for hearing on the Application must be in the form required by

3    LBR 9013-1(f), must be filed with the Clerk of the above-entitled Court and served on the Applicant,

4    his counsel, and the United States trustee, no later than fourteen (14) days from the date of service of

5    this Notice, plus three (3) days unless this Notice was served by personal delivery or posting as

6    described in F.R.Civ.P. 5(b)(2)(A)-(B). The Debtor will set a hearing date and send out notice if any

7    such response is timely received.

8    **NOTICE IS FURTHER GIVEN** that pursuant to LBR 9013-1(b)(4), no hearing will be held

9    if no response and request for hearing is received.  If you do not file a written objection in conformity

10    with applicable procedure and rules, the Application may be granted without a hearing and without

11    further notice to you.

12    Dated:  January 19, 2024                    G&B LAW, LLP,

13

14                                                          By: _____

15                                                                JEREMY H. ROTHSTEIN
                                                                   Attorneys for Debtor and Debtor-in-Possession
16                                                                Crown Jewel Properties, LLC

17

18

19

20

21

22

23

24

25

26

27

28



2425263.1 - 32278.0005

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16000 Ventura Blvd., Ste. 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled (specify): **NOTICE OF APPLICATION OF DEBTOR AND
DEBTOR-IN-POSSESSION TO EMPLOY SM REALTY ADVISORS CORP. AS REAL ESTATE AGENT FOR DEBTOR
AND DEBTOR IN POSSESSION NUNC PRO TUNC AS OF DECEMBER 1, 2023** will be served or was served in the
manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January
19, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dare Law**   dare.law@usdoj.gov
- **Douglas M Neistat**   dneistat@gblawllp.com, mramos@gblawllp.com
- **Matthew D Pham**   mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Jeremy H Rothstein**   jrothstein@gblawllp.com, msingleman@gblawllp.com;rsoll@gblawllp.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **David R Zaro**   dzaro@allenmatkins.com

☐   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On January 19, 2024, I served the following persons and/or entities at the last
known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes
a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for
each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 19, 2024, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| January 19, 2024 | Marleigh Singleman | |
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# SERVICE LIST

**Debtor**
Crown Jewel Properties, LLC
1860 Obispo Avenue, Suite F
Signal Hill, CA 90755

**Office of the U.S. Trustee**
United States Trustee
Attn: Dare Law
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
*via ECF*

## 20 LARGEST UNSECURED CREDITORS

California Business Ventures
Attn: Barry R. Sedlik
415 Elmwood Drive
Pasadena, CA 91105

Jenna Development, Inc.
1860 Obispo Ave Suite F
Signal Hill, CA 90755

Newport Consulting, Inc.
Attn: Steven R Zanderholm
711 W 17th Street, Suite A12
Costa Mesa, CA 92627

Timothy Howard
2244 N. Pacific Street
Orange, CA 92865

## ALL CREDITORS

Buchanan Mortgage Holdings, LLC
Attn: Tim Ballard & Scott Magoffin
501 Jamboree Road, Suite 4200
Newport Beach, CA 92660

San Diego County Treasurer – Tax Collector
P.O. Box 129009
San Diego, CA 92112

Eleo Electric
2258 Belmont Ave.
Long Beach, CA 90815

Kandila Bros
1860 Obispo Ave., Suite F
Signal Hill, CA 90755

Franchise Tax Board
Attn: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101

## NOTICE PURPOSES ONLY

Rutan & Tucker, LLP
Attn: Robert Dillaway
18575 Jamboree Road, 9th Floor
Irvine, CA 92612

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                          **F 9013-3.1.PROOF.SERVICE**
2410100.1 - 32278.0005

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16000 Ventura Blvd., Ste. 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled (specify): **APPLICATION TO EMPLOY SM REALTY ADVISORS CORP. AS REAL ESTATE ADVISORS CORP. AS REAL ESTATE AGENT FOR DEBTOR AND DEBTOR IN POSSESSION NUNC PRO TUNC AS OF DECEMBER 1, 2023; DECLARATION OF BARRY SIMSON RE STATEMENT OF DISINTERESTEDNESS** will be served or was served in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 19, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dare Law**    dare.law@usdoj.gov
- **Douglas M Neistat**    dneistat@gblawllp.com, mramos@gblawllp.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Jeremy H Rothstein**    jrothstein@gblawllp.com, msingleman@gblawllp.com;rsoll@gblawllp.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **David R Zaro**    dzaro@allenmatkins.com

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On January 19, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 19, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| January 19, 2024 | Marleigh Singleman | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
2410100.1 - 32278.0005

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**Debtor**
Crown Jewel Properties, LLC
1860 Obispo Avenue, Suite F
Signal Hill, CA 90755

**Office of the U.S. Trustee**
United States Trustee
Attn: Dare Law
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
*via ECF*

## 20 LARGEST UNSECURED CREDITORS

California Business Ventures
Attn: Barry R. Sedlik
415 Elmwood Drive
Pasadena, CA 91105

Jenna Development, Inc.
1860 Obispo Ave Suite F
Signal Hill, CA 90755

Newport Consulting, Inc.
Attn: Steven R Zanderholm
711 W 17th Street, Suite A12
Costa Mesa, CA 92627

Timothy Howard
2244 N. Pacific Street
Orange, CA 92865

## ALL CREDITORS

Buchanan Mortgage Holdings, LLC
Attn: Tim Ballard & Scott Magoffin
501 Jamboree Road, Suite 4200
Newport Beach, CA 92660

San Diego County Treasurer – Tax Collector
P.O. Box 129009
San Diego, CA 92112

Eleo Electric
2258 Belmont Ave.
Long Beach, CA 90815

Kandila Bros
1860 Obispo Ave., Suite F
Signal Hill, CA 90755

Franchise Tax Board
Attn: Bankruptcy
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101

## NOTICE PURPOSES ONLY

Rutan & Tucker, LLP
Attn: Robert Dillaway
18575 Jamboree Road, 9th Floor
Irvine, CA 92612

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
2410100.1 - 32278.0005

**F 9013-3.1.PROOF.SERVICE**